**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
--------------------------------------------------------X
FRANCIS J. KELLY and ELIZABETH G.
KELLY,

                    Plaintiffs,

       v.

TOWN OF SOUTHOLD, SOUTHOLD TOWN
BOARD, Southold Town Ordinance Inspector
LESTER BAYLINSON, Southold Town Ordinance
Inspector NICOLE BUCKNER, TRUSTEES OF
THE TOWN OF SOUTHOLD, and DOES 1-10,
all individually and in their official capacities,

                 Defendants.
--------------------------------------------------------X

                **REPORT AND**
           **RECOMMENDATION**

        21-CV-3215 (JMA) (LGD)

**LEE G. DUNST**, Magistrate Judge:

      Since June 7, 2021, plaintiffs Francis J. Kelly ("Mr. Kelly") and Elizabeth J. Kelly (together

with Mr. Kelly, "Plaintiffs") have pursued this federal action alleging that the Town Of Southold

("Town") and certain related individuals and entities violated the United States Constitution and the

Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et. seq.* by restricting Plaintiffs' use of

their real property within the Town (specifically, a marina located on the North Fork of Long Island).

*See generally* Electronic Case File Number ("ECF No.") 1. Prior to the filing of this federal lawsuit,

Plaintiffs had been involved in numerous New York State court proceedings going to back to 2014

regarding this same property that is the subject of the pending federal litigation. Presently before the

Court, pursuant to the referral from the Honorable Joan M. Azrack for a Report and Recommendation,

is the motion by all defendants to dismiss Plaintiffs' latest operative pleading: the [First] Amended

Complaint at ECF No. 49 ("FAC"). *See* ECF No. 67 ("Motion"). For the reasons set forth below, the

undersigned respectfully recommends that the Court (1) dismiss *sua sponte* with prejudice all claims

against defendants Southold Town Board and Trustees Of The Town Of Southold, and (2) grant the

Motion by (a) dismissing with prejudice the FAC's Counts III and VII, and (b) dismissing without

prejudice the balance of the FAC.

## I.   FACTUAL BACKGROUND[1]

### A.   The Parties And Nonparty Southold Town Zoning Board Of Appeals

Plaintiffs are married "avid mariners" who live in East Islip, New York.  FAC ¶ 5.  The Town is located in Suffolk County, New York.  *Id*. ¶ 6.  Defendant Southold Town Board ("Board") is the Town's "governing and legislative body, and is composed of the Town Supervisor and 5 other councilperson members."  *Id*. ¶ 7.  Defendant Trustees Of The Town Of Southold ("Trustees") is "the governing body" for the Town's "waterways and land which is located within 100' of the shorelines."  *Id*. ¶ 10.  Defendants Lester Baylinson ("Baylinson") and Nicole Buckner ("Buckner" and together with Baylinson, "Individual Defendants") were at all relevant times "Ordinance Inspector employee[s]" for the Town.  *Id*. ¶¶ 8-9.  Doe Defendants 1-10 "are meant to refer to other individuals who acted independently or together with the other named defendants in the events and occurrences described" in the FAC.  *Id*. ¶ 11.  Each of the Individual Defendants is sued both individually and in his or her official capacity.  This Report and Recommendation refers to all defendants named in the FAC collectively as "Defendants."

Nonparty Southold Town Zoning Board Of Appeals ("ZBA") is "a quasi-judicial body" composed of five members appointed by the Board.[2]  *Id*. ¶ 22.  "The ZBA is authorized under New York Town Law to hear appeals of applications that have been reviewed and issued a denial (Notice of Disapproval) by the Building Inspector under Chapter 280 (Zoning) of the Town Code."  *Id*.  "The

---

[1] Unless otherwise specified, the facts set forth herein are taken from the FAC and documents incorporated by reference therein.  *See Vengalattore v. Cornell Univ.*, 36 F.4th 87, 102 (2d Cir. 2022).  This Report and Recommendation also takes judicial notice of the below-noted filings from related actions.  *See Anderson v. Rochester-Genesee Reg'l Transp. Auth.*, 337 F.3d 201, 205 n.4 (2d Cir. 2003) (taking judicial notice of filing in another litigation between the parties; collecting cases that likewise took judicial notice of court filings in other actions); *Rothman v. Gregor*, 220 F.3d 81, 92 (2d Cir. 2000) (taking judicial notice of filing from another action).

[2] Board members, Trustees, and ZBA members are listed on the Town's website.  *See Town Supervisor/Town Board*, https://SoutholdTownNY.gov/Directory.aspx?DID=4 (last visited June 6, 2023); *Trustees*, https://SoutholdTown NY.gov/Directory.aspx?did=10 (last visited June 6, 2023); *Zoning Board*, https://SoutholdTownNY.gov/Directory.aspx? did=27 (last visited June 6, 2023).

ZBA also has original jurisdiction to consider uses specifically permitted under Chapter 280 (Zoning) by Special Exception application . . . when all requirements referred to in the Town Code and New York Town Laws have been met." *Id*.

> **B.      Plaintiffs' 2014 Acquisition Of The Property**

In June 2014, Plaintiffs acquired the marina within the Town located at 1900 Peconic Bay Boulevard in Laurel, New York ("Property"). *Id*. ¶ 21.  Since 1983, the Property has been zoned as "M-1," which "allows a very broad variety of commercial uses for marina property in close proximity to the water." *Id*. ¶ 25; *see also id*. ¶ 21 (explaining that the Property "abuts Brushes Creek which flows into the Peconic Bay").  When Plaintiffs acquired the Property, they reportedly were unaware that (1) "the County of Suffolk had designed a plan to revitalize a parcel of land in the surrounding areas as a county park for hiking trails and archery," (2) "the local residents and the neighborhood community near the P[roperty] maintained a close affiliation and influence with local county and town officials" and reportedly "sought to effectuate some manner of control over local government regulation," and (3) "members within the community" believed local residents "were entitled to public access along the Brushes Creek waterways using the boat ramp located on the P[roperty]." *Id*. ¶¶ 23-24.

> **C.      The 2014 Prosecution Of Plaintiffs For Impermissible Use Of The Property, The ZBA's 2016 Restricted Use Authorization For A Marina, And Plaintiffs' Unsuccessful 2016 Article 78 Proceeding Challenging Those Restrictions**

In 2014, the Town prosecuted Mr. Kelly for "lack of a 'site plan approval' and other related local code violations" on the Property ("2014 Prosecution").  FAC ¶ 27.  In "early 2016," the ZBA authorized the Property to be used as a marina, for a vessel of no more than 20 feet, with use of a "gravel parking lot without building structures" ("ZBA Authorization").  *Id*. ¶¶ 22, 26.  In doing so, the ZBA found that "no site plan approval was required" for Plaintiffs' "pre-existing use [of the Property] as a small watercraft marina."  *Id*. ¶ 26.  On August 24, 2016, Mr. Kelly commenced an

action against the ZBA in New York Supreme Court, Suffolk County captioned *Kelly v. Zoning Board Of Appeals for the Town Of Southold*, No. 8320/2016 ("2016 Article 78 Proceeding") to set aside the restrictions in ZBA Authorization "as arbitrary and capricious."  ECF No. 67-5.  In "late November 2016," the 2014 Prosecution was dismissed in light of the ZBA Authorization.  FAC ¶ 27.  On May 20, 2019, the 2016 Article 78 Proceeding was dismissed with prejudice.  ECF No. 67-5.

### D.    The Town's Successful 2015 Enforcement Action Enjoining Plaintiffs From Using The Property As A Recreational Vehicle Park

On August 27, 2015, the Town commenced an action against Plaintiffs in New York Supreme Court, Suffolk County, captioned *Town of Southold v. Kelly*, No. 15142/2015 ("2015 Enforcement Action"), to enjoin Plaintiffs' use of the Property "as a tourist and trailer camp and/or recreational vehicle park" without the requisite permits.[3]  *Town of Southold v. Kelly*, No. 15142/2015, 2018 WL 1558797, at *3 (N.Y. Sup. Ct. Mar. 21, 2018).  On March 21, 2018, the Court issued an order that (1) permanently enjoined Plaintiffs and all others acting on their behalf "from operating a Tourist Camp and/or Recreational Vehicle Park, as those terms are defined and regulated in Chapter 253 of the Code of the Town of Southold" at the Property unless "all necessary certificates of occupancy, permits and/or approvals for such use are obtained from the Town of Southold"; and (2) directed Plaintiffs to comply with "Southold Town Code Section 280-115" such that "no single automobile trailer or house car may be located on the Premises unless authorized by the [Board] and subject to such conditions as may be prescribed by [the Board]."  *Id*. at *2.  Plaintiffs did not appeal that order.

### E.    Mr. Kelly's Unsuccessful 2017 Malicious Prosecution Case

On November 25, 2017, Mr. Kelly "commenced a civil rights lawsuit for malicious prosecution" against the Town in New York Supreme Court, Suffolk County captioned *Kelly v. Town*

---

[3]  The Town Code defines "recreational vehicle" as "[a] portable vehicular unit designed and built to be used for temporary living quarters for recreational, camping or travel uses, which either has its own motive power or is mounted on or drawn by another power-driven vehicle, including travel trailers, motorized homes, pickup coaches and camping trailers, registered and licensed for normal use on the highways of the State of New York." Southold Town Code § 253-20. This Report and Recommendation uses the term "RV" to refer to such a vehicle.

*Of Southold,* No. 622655/2017 ("2017 Malicious Prosecution Action").  FAC ¶ 27.  In that action, Mr. Kelly asserted that the Town "wrongfully deprived him of his property" when the Town brought the 2014 Prosecution.  *Kelly v. Town of Southold*, No. 622655/2017, 2021 WL 11448947, at *1 (N.Y. Sup. Ct. Dec. 08, 2021); *see also id.* (explaining that "the crux" of the 2017 Malicious Prosecution Case was that the Town "knew that plaintiff's activities were lawful and that it acted willfully, wantonly, maliciously and recklessly with the intent to injure plaintiff.").  On December 8, 2021, the Court dismissed the 2017 Malicious Prosecution Action because Mr. Kelly willfully failed to comply with the Town's discovery demands and multiple court orders.  *See id.* at *1-2.

**F.    Plaintiffs' 2018 Unsuccessful Application To Use Their RV On The Property**

The Board passed "a resolution in 1996" that contained a policy providing limited circumstances in which the Board would permit RVs to be parked outside of approved parks.  FAC ¶ 31; *see* ECF No. 67-9 (copy of the December 23, 1996 Board resolution).  That resolution provides that the Board would allow RVs to be parked outside of approved parks only in specified circumstances, including for use (1) by a watchman when there is a sufficient history of security violations on the site, (2) as a temporary residence during construction, and (3) as seasonal farm labor housing.  ECF No. 67-9.  Plaintiffs contend that the policy was "never promulgated into law."  FAC ¶ 31; *but see* Southold Town Code § 280-115(B) (providing that an automobile trailer or house car may not be located outside a tourist camp unless "authorized by the Town Board and subject to such conditions as may be prescribed by the Town Board").

Plaintiffs own an RV that reportedly "has New York State handicapped license plates, issued . . . under NY VTL §385 because Mr. Kelly and Mrs. Kelly have medical issues that necessitate those plates and permissions."  FAC ¶ 30.  Further, Mr. Kelly "has a 'handicapped' parking permit issued by the Town of Islip" that reportedly "legitimately documents his lawful parking status in handicapped parking spots all over Long Island."  *Id.*

Pursuant to an undated application that was notarized on May 1, 2018, Mr. Kelly applied to the Board for a permit to park his "'handicapped-credentialed' recreational vehicle on his marina property." FAC ¶ 31; *see* ECF No. 67-8 (copy of RV parking permit application). However, that application "was rejected in writing on June 6, 2018, based upon a vague statement that he did not meet [the] Town's policy for parking permits" ("2018 RV Permit Denial"). FAC ¶ 30; *see* ECF No. 67-8 (copy of the 2018 RV Permit Denial stating that "the proposed use of the trailer as applied for is inconsistent with the Town's Policy").

### G.    Additional Town Code Violations And Resulting Fines And Judgments

The Town, through the Individual Defendants acting as Town Ordinance Inspectors, issued to Mr. Kelly tickets constituting "accusatory instruments for Southold Town Code violations" allegedly "as part of a retaliatory and intimidating process of harassment and risk of damages to [Mr.] Kelly by disparagement of his credit worthiness, as each charge could result in another $10,000 fine." FAC ¶¶ 28, ¶¶ 81-82; *see also id*. ¶ 32 (alleging that the "Town continued to excessively fine Plaintiffs for various alleged violations and prevented their premises from operating in a manner consistent with a commercial marina"). For example, on or about May 1, 2018, Buckner reportedly observed the Property and issued appearance tickets for Town Code violations that restrict building uses, posting signs, and operating tourist camps. *See id*. ¶ 29 (alleging Buckner issued tickets for violations of the Southold Town Code §§ 280-52, 280-81, 280-115). Plaintiffs allege that the Individual Defendants' actions were "legally insufficient" because, as Plaintiffs see it, "Ordinance Inspectors are not authorized under the Town Code to enforce the Town of Southold's zoning code." *Id*. ¶¶ 81-82.

On February 17, 2021, following trial in the Town's Justice Court on the charges contained in those tickets, "Plaintiffs were issued $92,000 in fines." *Id*. ¶ 32. On March 18, 2021, those fines were entered into five judgments against Mr. Kelly ("Five Judgments"). *Id*. Mr. Kelly "filed Notice(s) of Appeal" for the Five Judgments (*id*. ¶ 33), but that appeal was dismissed on April 11, 2022. ECF No.

67-10.

### H.    The Town's Successful 2020 Enforcement Action And Resulting Order Directing Plaintiffs to Remedy Zoning Violations On The Property

On August 21, 2020—after "several recreational vehicles and residential-type trailers" as well as a "semi-permanent residential structure" were observed on the Property in violation of the permanent injunction concerning RVs from the 2015 Enforcement Action—the Town commenced another action against Plaintiffs in New York Supreme Court, Suffolk County, captioned *Town of Southold v. Kelly*, No. 611268/2020 ("2020 Enforcement Action"). *Town of Southold v. Kelly,* 2021 N.Y. Misc. LEXIS 13250, *2, *6-7 (Sup. Ct. Mar. 29, 2021).  In that action, the Town sought to (1) enjoin "the use and occupation of the [Property]" until Defendants obtain certificates of occupancy and necessary permits for such use and "until such time as defendants have abated the public nuisance on the premises"; (2) compel Defendants to "remove all non-complying/illegal structures, vehicles and trailers" from the Property; and (3) direct Defendants to "maintain the premises in accordance with all rules, regulations, codes and laws of the Town."  *Id*. at *2-3.  Notably, it was reported in that action that Mr. Kelly stated he "was aware that he was violating the Town code by having the structure and vehicles on the premises" and that he "had no intention of complying with the [permanent injunction]" from the 2015 Enforcement Action.  *Id*. at *7-8.

On March 29, 2021, the Court (1) granted the Town's motion for a default judgment, (2) permanently enjoined Plaintiffs from allowing the "semi-permanent residential structure" and RVs to be on the Property, and (3) directed Plaintiffs to remove from the Property within 45 days all "structure and vehicles for which no building permits or certificates of occupancy were obtained."  *Id*. at *7, *12-13.  On April 26, 2021, Plaintiffs appealed and sought to stay that order but, on June 4, 2021, the Appellate Division, Second Department denied that appeal.  *See* ECF No. 67-12.  On April 30, 2021, Plaintiffs moved to reargue the default judgment and permanent injunction but that motion was denied on December 8, 2021.  *See Town of Southold v. Kelly*, No. 611268/2020, 2021 WL

11448946, at *1-2 (N.Y. Sup. Ct. Dec. 08, 2021).

On October 12, 2021, the state court found Plaintiffs in civil and criminal contempt for willfully disobeying the permanent injunction in the 2015 Enforcement Action by continuing to use the Property "as a tourist camp and recreational vehicle park without obtaining approval from the Town of Southold and without obtaining a certificate of occupancy or permit." *Town of Southold v. Kelly*, 2021 N.Y. Misc. LEXIS 13142, *1-2 (Sup. Ct. Oct. 12, 2021). Lastly, on April 6, 2022, the state court so-ordered a stipulation filed by the parties that acknowledged Plaintiffs removed the offending vehicles and structure from the Property; required Plaintiffs to pay $2,000 in fines for their civil and criminal contempt; and required Plaintiffs to pay $1,000 to the Town for its costs. *See* ECF No. 67-17.

## II.     Procedural History

### A.     The Original Complaint

On June 7, 2021, Plaintiffs commenced this federal action by filing a complaint asserting twelve causes of action under federal and New York law against the current Defendants, ten additional defendants, and fifty John Doe defendants in connection with restrictions on Plaintiffs' use of the Property. *See generally* ECF No. 1 ("Complaint"). On June 17, 2021, the Town and Board were properly served. *See* ECF Nos. 13-14. The docket does not reflect that the Trustees and Individual Defendants were ever served with the Complaint.

### B.     The Pre-Motion To Dismiss Conference Requests and Change Of Plaintiffs' Counsel

On July 8, 2021, all defendants named in the Complaint filed letter motions with District Judge Joan M. Azrack seeking a pre-motion conference in connection with anticipated motions to dismiss this action. *See* ECF Nos. 18-19. On July 23, 2021, Plaintiffs' counsel moved to withdraw. On

September 14, 2021, then-assigned Magistrate Judge Steven I. Locke[4] granted the motion to withdraw and stayed the case until November 15, 2021 to permit Plaintiffs to retain new counsel.  ECF No. 34. On October 5, 2021, Judge Azrack denied the pre-motion conference letter motions without prejudice given the stay imposed by Judge Locke.  *See* October 5, 2021 Order.

On December 29, 2021, all defendants named in the Complaint renewed their pre-motion conference requests with Judge Azrack.  *See* ECF Nos. 41, 43.  That same day, Anthony M. LaPinta, one of Plaintiffs' current attorneys, formally appeared in this action by filing a notice of appearance. *See* ECF No. 44.

### C.    The First Amended Complaint

On April 18, 2022, Plaintiffs responded to the pending pre-motion conference requests by reporting that they planned to amend the Complaint to remove several defendants and "narrow the claims."  ECF No. 47 at 1.  On June 8, 2022, Judge Azrack granted Plaintiffs leave to amend the complaint.  *See* June 8, 2022 Order (granting leave to amend the complaint by June 29, 2022); June 28, 2022 Order (extending Plaintiffs' amendment deadline to July 7, 2022).

On July 7, 2022, Plaintiffs filed the FAC.  *See* FAC.  The FAC brings seven causes of action:

- Count I is a claim under 42 U.S.C. Section 1983 ("Section 1983") asserting that the "The Town of Southold, through its Town Justice Court, violated [Plaintiffs'] Eighth Amendment rights by imposing excessive fines that directly interfered with [Plaintiffs'] use and enjoyment of their property."  FAC ¶¶ 38-51.

- Count II is a Section 1983 claim asserting that the Town violated the Fourteenth Amendment because "Plaintiffs were entitled to a jury trial to determine the constitutionality of the Town's parking permit policy . . . particularly when $92,000 in fines were imposed."  *Id*. ¶¶ 52-56.

- Count III is a Section 1983 claim asserting the Town and Board violated Plaintiffs' Fourteenth Amendment equal protection and due process rights by issuing the 2018 RV Permit Denial.  *See id*. ¶¶ 57-68.

- Count IV is a Section 1983 claim asserting all Defendants violated the Fifth

---

[4] This action was reassigned to the undersigned Magistrate Judge on June 8, 2022.  *See* June 8, 2022 Notice Of Reassignment.

Amendment's "Taking's Clause" because Defendants allegedly "engaged a course of conduct to make life intolerable for Plaintiffs so that they would abandon their plan for a successful commercial marina . . . ." *Id*. ¶¶ 69-76.

- Count V is a Section 1983 claim asserting all Defendants violated the Fourth, Fifth, and Fourteenth Amendments by seizing the Property without probable cause, impeding Plaintiffs' "liberty interests" without probable cause, "engag[ing] in selective enforcement" of the Town Code, and "not affording Plaintiff procedural and substantive Due Process, by utilizing arbitrary, undefined *ad hoc* standards, in the context of municipal procedures concerning land use matters, and thus ensuring that Plaintiffs would be singled out and denied the Equal Protection of the law." *Id*. ¶¶ 77-83.

- Count VI is a Section 1983 claim asserting the Town violated the Fourteenth Amendment by "fail[ing] to train and educate their employees about the protections afforded under the Fourth, Fifth, Eighth, Ninth and Fourteenth Amendment of the United States Constitution and Article I, Section 6 of the New York State Constitution." *Id*. ¶¶ 84-91.

- Count VII asserts the Town and Board violated the ADA by issuing the 2018 RV Permit Denial. *See id*. ¶¶ 92-96.

### D.    The Motion To Dismiss The FAC

On July 28, 2022, Defendants filed a letter motion with Judge Azrack seeking a pre-motion conference in connection with an anticipated motion to dismiss the FAC. ECF No. 50. The next day, Plaintiffs responded to that letter motion. ECF No. 52. On September 27, 2022, Defendants were served with the FAC. *See* ECF Nos. 60-64. On October 4, 2022, Judge Azrack directed the parties to file a proposed motion to dismiss briefing schedule. October 4, 2022 Scheduling Order. On December 7, 2022, Judge Azrack adopted the parties' proposed briefing schedule. *See* December 7, 2022 Order (adopting the proposed briefing schedule at ECF No. 65). On January 18, 2023, Judge Azrack adopted the parties' modified proposed briefing schedule. *See* January 18, 2023 Order (adopting the modified proposed briefing schedule at ECF No. 66).

On February 23, 2023, Defendants filed all papers for the fully briefed Motion. ECF No. 67. Defendants seek dismissal on the grounds that (1) the Court lacks subject matter jurisdiction or should decline to exercise jurisdiction, (2) Plaintiffs failed to timely serve Defendants, (3) Plaintiffs failed to

notify the state of New York that they are challenging the constitutionality of state law, (4) the claims are time-barred, (5) the claims against the Individual Defendants are barred by qualified immunity, (6) the claims are barred by res judicata and collateral estoppel, and (7) the FAC fails to state a claim. *See* ECF No. 67-2 ("Def. Mem."); ECF No. 67-22 ("Reply").  On May 5, 2023, Judge Azrack referred the Motion to the undersigned for a Report and Recommendation. *See* May 5, 2023 Order Referring Motion.

## III.    LEGAL STANDARDS

Given the numerous legal issues raised in connection with the Motion, the Court sets forth legal standards where necessary below.  *See Jenkins v. Cnty of Wash.*, 126 F. Supp. 3d 255, 275 (N.D.N.Y. 2015) (taking this approach); *see also United States v. E. River Hous. Corp.*, 90 F. Supp. 3d 118, 138 n.20 (S.D.N.Y. 2015) (explaining that "it is not necessary to state the legal standards beyond those needed to adjudicate a dispositive motion).

## IV.    DISCUSSION

### A.    Subject Matter Jurisdiction And Abstention

Defendants argue that the Court lacks subject matter jurisdiction because "Plaintiff[s are] attempting to collaterally attack unfavorable state court judgments" in this Court when they must instead "exhaust their appellate remedies through a state's highest court, and only then may they seek federal review by petitioning for certiori to the U.S. Supreme Court."  Def. Mem. at 7 (citing 28 U.S.C. § 1257).   Defendants alternatively contend that, even if there is jurisdiction, the Court should decline to exercise jurisdiction over the FAC under abstention principles.  *See id*. at 8.

1.    <u>Subject Matter Jurisdiction</u>

"When a federal suit follows a state suit, the former may, under certain circumstances, be prohibited by what has become known as the *Rooker-Feldman* doctrine."  *Sung Cho v. City of N.Y.*, 910 F.3d 639, 644 (2d Cir. 2018).  That doctrine is derived from two Supreme Court cases—*Rooker v.*

*Fidelity Trust Co.*, 263 U.S. 413 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983)—which together "established the clear principle that federal district courts lack jurisdiction over suits that are, in substance, appeals from state-court judgments." *Sung Cho*, 910 F.3d at 644 (quoting *Hoblock v. Albany Cty. Bd. of Elections*, 422 F.3d 77, 84 (2d Cir. 2005)). "The doctrine is a consequence of 28 U.S.C. § 1257, which 'vests authority to review a state court's judgment solely in the Supreme Court.'" *Plymouth Venture Partners, II, L.P. v. GTR Source, LLC*, 988 F.3d 634, 641 (2d Cir. 2021) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 292 (2005)) (internal alterations omitted); *see Green v. Mattingly*, 585 F.3d 97, 101 (2d Cir. 2009) ("Underlying the *Rooker-Feldman* doctrine is the principle, expressed by Congress in 28 U.S.C. § 1257, that within the federal judicial system, only the Supreme Court may review state-court decisions." (internal quotations omitted)). In other words, "[s]ince federal district courts are granted original—and not appellate—jurisdiction, cases that function as *de facto* appeals of state-court judgments are therefore jurisdictionally barred." *Sung Cho*, 910 F.3d at 644.

The Supreme Court has "confined" the *Rooker-Feldman* doctrine to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil*, 544 U.S. at 284. Consistent with that ruling, the following elements must be shown for the *Rooker-Feldman* doctrine to deprive a district court of jurisdiction:

> (1) "the federal-court plaintiff must have lost in state court"; (2) "the plaintiff must complain of injuries caused by a state-court judgment"; (3) "the plaintiff must invite district court review and rejection of that judgment"; and (4) "the state-court judgment must have been rendered before the district court proceedings commenced."

*Plymouth*, 988 F.3d at 641 (quoting *Hoblock*, 422 F.3d at 85). "As *Rooker-Feldman* goes to subject matter jurisdiction, it must be addressed first . . . ." *Id.*

a)      *The* Rooker-Feldman *Doctrine Precludes Counts I, II, and Part of Count IV*

The undersigned finds that the Court lacks subject matter jurisdiction under the *Rooker-Feldman* doctrine to address the FAC's Counts I, II, and a portion of Count IV.

Count I and part of Count IV relate to Plaintiffs' *prior* losses in state court and Plaintiffs' alleged injuries caused by state-court judgments *predating* this federal action.  Count I asserts that the Five Judgments imposed "excessive fines" in violation of the Eighth Amendment.  FAC ¶¶ 32, 47.  Count IV similarly asserts (in part) that the Town violated the Fifth Amendment by "subjecting Plaintiffs to excessive fines."  *Id*. ¶ 75.  The Five Judgments were entered by the state court on March 8, 2021—which was three months before the Complaint was filed and fifteen months before the FAC was filed.  Plaintiffs now seek after-the-fact federal court review and rejection of the Five Judgments by seeking (1) damages, presumably of no less than the amount of the fines imposed in the Five Judgments, and (2) a declaratory judgment that (among other things) prohibits the Town from enforcing the Five Judgments and the statue (N.Y. Mun. Home Rule §10) that reportedly authorized the Town to pursue the fines imposed in the Five Judgments.  *Id*. ¶¶ 49-50, 76; *see also id*. at 25-26 (seeking damages and "injunctive relief that adequately addresses the issues raised in this amended complaint").  At bottom, *Rooker-Feldman* bars Count I and the aforementioned portion of Count IV because "the merits of th[ese] claim[s] cannot be stated except in terms of the state-court judgment . . . the Town [did not] independently impose[] an excessive fine.  The alleged constitutional wrong was the content of the judgment."  *Campbell v. City of Spencer*, 682 F.3d 1278, 1285 (10th Cir. 2012); *accord Weissbrod v. Gonzalez*, 576 F. App'x 18, 19 (2d Cir. 2014) ("Weissbrod complains principally of injuries caused by a state court judgment ordering her to pay a fine . . . Yet the *Rooker–Feldman* doctrine bars any attempt by Weissbrod to disturb these disciplinary orders."); *Koziel v. City Ct. of Yonkers*, 351 F. App'x 470, 471 (2d Cir. 2009) (affirming that the *Rooker-Feldman* doctrine applied to plaintiff's claim that the City of Yonkers improperly imposed a fine for traffic violations);

*see also Sides v. City of Champaign*, 496 F.3d 820, 824 (7th Cir. 2007) ("[A]ny effort to obtain review

of a conviction—review that would imply a declaration of innocence, or even a return of the $500 fine

—runs headlong into the *Rooker–Feldman* doctrine.").

Count II likewise relates to Plaintiffs' earlier losses in state court and alleged injuries resulting

from the same state-court judgments that predated this action. Specifically, Count II asserts that the

Five Judgments violated the Fourteenth Amendment because they did not result from jury trials. FAC

¶¶ 53, 56. Plaintiffs thus seek federal court review and rejection of the Five Judgements in the same

manner described above. *See* FAC ¶¶ 52, 69 (incorporating prior paragraphs, including paragraphs

49-50 seeking damages and the above-described declaratory relief); *id*. at 25-26 (seeking damages and

"injunctive relief that adequately addresses the issues raised in this amended complaint"). The

*Rooker-Feldman* doctrine similarly deprives this Court of subject matter jurisdiction over Count II.

*See Springer v. Perryman*, 401 F. App'x 457, 457-58 (11th Cir. 2010) (finding *Rooker-Feldman*

doctrine applied to claim that state court violated plaintiff's jury trial right); *Pieper v. Am. Arbitration*

*Ass'n*, 336 F.3d 458, 460-61, 464 (6th Cir. 2003) (same); *Hollis v. Tarrant Cnty.*, No. 22-CV-00459,

2022 WL 18109543, at *2 (N.D. Tex. Dec. 19, 2022) (same), *report and recommendation adopted*,

2023 WL 50804 (N.D. Tex. Jan. 4, 2023).[5]

For the foregoing reasons, the undersigned recommends that Count I, Count II, and the portion

of Count IV regarding the Five Judgments be dismissed without prejudice under the *Rooker-Feldman*

doctrine. *See Pelczar v. Kelly*, 795 Fed. App'x. 55, 57 (2d Cir. 2020) ("[B]ecause the *Rooker-*

*Feldman* doctrine is a matter of subject-matter jurisdiction, the district court lacked the power to

dismiss the complaint with prejudice. Accordingly, we vacate the judgment and remand to the district

_____

[5] *See also Ledford v. Rutledge*, No. 17-CV-438-TLS, 2018 WL 4216820, at *9 (N.D. Ind. Sept. 4, 2018) ("The Plaintiff is asking the Court to reject the state court's judgment based on the denial of a jury trial . . . However, the *Rooker-Feldman* doctrine bars this claim because it attacks the state court's judgment"); *Citigroup Glob. Markets Realty Corp. v. Brown*, No. 2:13-CV-1232, 2014 WL 3866532, at *2 (S.D. Ohio Aug. 6, 2014) ("Because the source of the injury alleged by the Browns is the state court's decision to hold a bench trial and not a jury trial, this Court has no jurisdiction to hear the Browns' claim."), *report and recommendation adopted*, 2014 WL 4748615 (S.D. Ohio Sept. 23, 2014).

14

court with instructions to dismiss the complaint without prejudice." (internal quotations and alterations omitted)); *see also Jusino v. Fed'n of Cath. Tchrs., Inc.*, 54 F.4th 95, 106 (2d Cir. 2022) ("[D]ismissals for lack of subject-matter jurisdiction must be without prejudice, rather than with prejudice . . . ." (internal quotations and alterations omitted)), *cert. denied*, 143 S. Ct. 1056 (2023).

> b) The Rooker-Feldman *Doctrine Does Not Otherwise Apply To Counts III-VII*

The undersigned reaches a different conclusion for the remaining causes of action. Defendants contend that this Court lacks subject matter jurisdiction because "every single issue raised by Plaintiff has already been litigated to conclusion in the state court." Reply at 1. But that assertion, even if true, does not satisfy the standard for invoking the *Rooker-Feldman* doctrine. *Rooker-Feldman*'s second element "turns not on the *similarity* between a party's state-court and federal-court claims (which is, generally speaking, the focus of ordinary preclusion law), but rather on the *causal relationship* between the state-court judgment and the injury of which the party complains in federal court." *Plymouth*, 988 F.3d at 641 (quoting *McKithen v. Brown*, 481 F.3d 89, 97-98 (2d Cir. 2007)); *see Sung Cho*, 910 F.3d at 646 ("[T]he second requirement—that the plaintiff complains of an injury *caused* by a state-court judgment—is the 'core requirement from which the other[] [*Rooker-Feldman* requirements] derive.'" (quoting *Hoblock*, 422 F.3d at 87)). "The upshot of this rule is that *Rooker-Feldman* preclusion does not apply to claims seeking to redress injuries that 'existed prior in time to the state-court proceedings.'" *Plymouth*, 988 F.3d at 641 (quoting *McKithen*, 481 F.3d at 98). Put differently, *Rooker-Feldman* precludes suits in district courts that challenge "actions [that] are produced by a state-court judgment and not simply ratified, acquiesced in, or left unpunished by it." *Sung Cho*, 910 F.3d at 646 (internal quotations omitted).

Under that principle, the *Rooker-Feldman* doctrine is inapplicable to causes of action that challenge injuries *not* caused by state court judgments. In Counts III, IV, V, VI, and VII, Plaintiffs assert separate harms including the issuance of tickets, the 2018 RV Permit Denial, and the underlying

failure to train Town employees (as allegedly violating the ADA and the Fourth, Fifth, and Fourteenth Amendments)—and not the effects of any state court judgment. *See* FAC ¶¶ 57-96 (setting forth allegations for Counts III-VII); *Plymouth*, 988 F.3d at 641 (finding the *Rooker-Feldman* doctrine inapplicable to claims because they concerned events "not *caused* by the prior state-court judgment"); *Sung Cho*, 910 F.3d at 649 (finding *Rooker-Feldman* doctrine inapplicable because plaintiffs sought to remedy an injury caused "prior to any judicial action, . . . not an injury that flows from a state-court judgment"); *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 94–95 (2d Cir. 2015) (finding *Rooker-Feldman* doctrine inapplicable to claims because they "speak not to the propriety of the state court judgments, but to the . . . course of conduct that defendants pursued in obtaining such judgments").

2.   <u>Abstention</u>

Defendants contend that "[e]ven if the Court had the ability to exercise jurisdiction over any of these claims, it should nonetheless abstain from doing so due to the risk of 'undue interference with state proceedings.'" Def. Mem. at 8 (quoting *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72 (2013)). That meager one-sentence argument seeks to invoke the *Younger* abstention doctrine. *See id.* (ultimately citing *Younger v. Harris*, 401 U.S. 37 (1971)); *see also Cavanaugh v. Geballe*, 28 F.4th 428, 430 & n.1 (2d Cir. 2022) (acknowledging that the *Younger* abstention doctrine derives from *Younger v. Harris*, 401 U.S. 37 (1971)). The undersigned disagrees with Defendants.

"In the main, federal courts are obliged to decide cases within the scope of federal jurisdiction." *Sprint Commc'ns*, 571 U.S. at 72; *see Cavanaugh*, 28 F.4th at 430 ("Federal courts have a virtually unflagging obligation to exercise the jurisdiction given to them." (internal quotations and alterations omitted)). The *Younger* abstention doctrine, however, provides "certain instances in which the prospect of undue interference with [pending] state proceedings counsels against federal relief." *Sprint Commc'ns*, 571 U.S. at 72. Indeed, a district court should abstain under *Younger* only during

the pendency of three "exceptional" actions: (1) state criminal prosecutions, (2) civil enforcement proceedings that are "akin to criminal prosecutions," and (3) civil proceedings "involving certain orders uniquely in furtherance of the state courts' ability to perform their judicial functions." *Id*. at 78 (internal quotations and alterations omitted); *see Cavanaugh*, 28 F.4th at 432 (same). *Younger* abstention "is not jurisdictional; rather it is a defense that can be waived." *Tolliver v. Skinner*, No. 12-CV-971, 2013 WL 658079, at *13 (S.D.N.Y. Feb. 11, 2013) (citing *McCune v. Frank*, 521 F.2d 1152, 1157 n.15 (2d Cir. 1975)). Accordingly, "a party asserting the doctrine as a defense bears the burden of establishing that it applies." *In re Williams*, No. 1-18-44707, 2020 WL 3412775, at *13 (Bankr. E.D.N.Y. June 18, 2020).

Defendants make no effort to address the standard for *Younger* abstention and thus "failed to meet their burden of showing that it applies in this case." *Tolliver*, 2013 WL 658079, at *14. In fact, Defendants contradict the *Younger* abstention standard by asserting that "every single issue raised by Plaintiff has already been *litigated to conclusion* in the state court." Reply at 1 (emphasis added); *see Osuagwu v. Home Point Fin. Corp.,* No. 22-CV-3830, 2022 WL 1645305, at *5-6 (S.D.N.Y. May 24, 2022) (explaining that *Younger* abstention does not apply after the requisite state court action concludes), *aff'd*, No. 22-1403, 2023 WL 3335315 (2d Cir. May 10, 2023); *Ese A. O'Diah v. TBTA-Triborough Bridge & Tunnel Auth.*, No. 19-CV-7586, 2021 WL 2581446, at *4 (S.D.N.Y. June 23, 2021) (finding *Younger* abstention inapplicable because "[t]he administrative proceeding has concluded, meaning that this federal litigation does not risk coming into conflict with any state proceeding"); *see also Amtrak v. McDonald*, 978 F. Supp. 2d 215, 241 (S.D.N.Y. 2013) (declining to apply *Younger* abstention because there was no ongoing state court proceeding). Under these circumstances, *Younger* abstention does not apply here.

### B.    Two Improperly Sued Defendants

The undersigned finds *sua sponte* that the Board and Trustees are improper parties and must be dismissed.  *See Muka v. Murphy*, 358 F. App'x 239, 241 (2d Cir. 2009) ("A district court's ability *sua sponte* to dismiss a complaint that lacks a basis in law or fact is well-established."); *Fitzgerald v. First E. Seventh St. Tenants Corp.*, 221 F.3d 362, 364 (2d Cir. 2000) (per curiam) (holding that "district courts may dismiss a frivolous complaint *sua sponte*" and affirming such a dismissal); *Raghavendra v. Fenn*, No. 16-CV-4118, 2019 WL 4963257, at *3-6 (E.D.N.Y. Oct. 7, 2019) (Azrack, J.) (dismissing all claims *sua sponte* as frivolous).  Plaintiffs acknowledge that the Board and Trustees are "governing bod[ies]" for the Town.  FAC ¶¶ 7, 10; *see also* N.Y. TOWN LAW §§ 60, 64 (providing powers for each town board); Southold Town Code § 96-3 (authorizing Trustees to regulate Town waters and adjacent lands).  "Under New York law, departments that are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and, therefore, cannot sue or be sued." *Soundview Assocs. v. Town of Riverhead*, 725 F. Supp. 2d 320, 343 (E.D.N.Y. 2010) (internal quotations omitted); *see Highview Props. D.H.F. Inc. v. Town of Monroe*, 606 F. Supp. 3d 5, 26 (S.D.N.Y. 2022) (similar).  The claims against the Board and Trustees should therefore be dismissed with prejudice.  *See Highview Props.*, 606 F. Supp. 3d at 26 (dismissing claims against town board because it is a non-suable entity); *Soundview Assoc.*, 725 F. Supp. 2d at 344 (dismissing claims against town board and planning department because they are non-suable entities); *Town & Country Adult Living, Inc. v. Vill./Town of Mount Kisco*, No. 17-CV-8586, 2019 WL 1368560, at *13 (S.D.N.Y. Mar. 26, 2019) ("The Board of Trustees and Planning Board are also dismissed because they are not suable entities."); *see also Melendez v. Sirius XM Radio, Inc.*, 50 F.4th 294, 309 (2d Cir. 2022) (affirming dismissal with prejudice because amendment would be futile).

## C.    Improper Service

Defendants assert that this action must be dismissed under Federal Rule of Civil Procedure ("Rule") 4(m) due to untimely service.  *See* Def. Mem. at 8-9.  The undersigned finds that service on the Town was proper, while service on the Individual Defendants was untimely.

Under Rule 4(m),

If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m).  The Town was timely served on June 17, 2021—just ten days after Plaintiffs commenced this action.[6]  *See* ECF No. 13 (executed summons reflecting service upon the Deputy Town Clerk at the Town Hall); *see also* Fed. R. Civ. P 4(j)(2)(B) (allowing service on a local government as permitted by the law of its state); N.Y. C.P.L.R. § 311(a)(5) (requiring service on a town to be made to the town clerk).

The Individual Defendants, however, were never timely served.  Plaintiffs were required to serve the Individual Defendants by September 7, 2021.  *See* Complaint (filed June 7, 2021); Fed. R. Civ. P. 4(m) (requiring service within 90 days); Fed. R. Civ. P. 6 (a)(1)(C) (requiring periods measured in days to end on a day that is neither a weekend day nor a holiday).  Plaintiffs, however, did not serve the Individual Defendants until over one year later, on September 27, 2022.  ECF Nos. 61-62.  Excluding the 60-day period in which this case was stayed, Plaintiffs failed to serve the Individual Defendants for over 320 days—despite repeated court warnings about this failure of service.[7]

---

[6] Defendants failed to acknowledge this point even though Plaintiffs raised it in their opposition.  *Compare* ECF No. 67-18 ("Opp.") at 16 (citing ECF No. 13) *with* Reply at 2.

[7] Indeed, Plaintiffs were repeatedly warned of their failure to serve the Individual Defendants.  On November 30, 2021, Plaintiffs acknowledged during a status conference with Judge Locke that they failed to effectuate service and stated they would serve all unserved Defendants.  *See* ECF No. 45 at 2:7-15, 9:17-24, 15:6-16:5.  Accordingly, Judge Locke's

Plaintiffs attempt to overcome their deficiency by misrepresenting Judge Azrack's June 8, 2022 Order granting leave to amend the Complaint.  According to Plaintiffs, Judge Azrack "direct[ed] Plaintiffs to submit the [FAC] with the understanding that service would be made in compliance with FRCP 4."  Opp. at 15.  To the contrary, that Order did *not* address service and even expressly permitted Defendants to "renew" their dismissal arguments—*which included the lack of service*—after Plaintiffs filed the FAC.  *See* June 8, 2022 Order (denying motion for a pre-motion to dismiss conference at ECF No. 41); ECF No. 41 at 2 (stating Defendants sought to seek dismissal for failure to serve the Individual Defendants).

Plaintiffs also argue that there is good cause to allow their untimely service on the Individual Defendants because they "were without counsel for a significant period of time following the filing of the original complaint."  Opp. at 15.  But Plaintiffs' former "*pro se* status 'is no excuse for failure to serve the defendant[s] properly and does not automatically amount to good cause.'"  *Bey v. Nassau Cnty. Dist. Attorney's Off.*, No. 21-CV-5714, 2022 WL 1469401, at *3 (E.D.N.Y. May 10, 2022) (quoting *Jordan v. Forfeiture Support Assocs.*, 928 F. Supp. 2d 588, 598 (E.D.N.Y. 2013)); *see Kogan v. Facebook, Inc.*, 334 F.R.D. 393, 402–03 (S.D.N.Y. 2020) ("The purported three-month gap in Kogan's representation does not excuse his failure to complete service or file a waiver of service before the Rule 4(m) deadline, or his subsequent wide miss of the deadline.").  Finally, the undersigned declines to grant a discretionary extension of time for service because Plaintiffs have "not argued or provided evidence that the *Vaher* factors are satisfied . . . [T]he fact that [Plaintiffs were]

---

order from that conference provided "Plaintiffs are reminded that not all named Defendants in this case have been served and so if they intend to keep those Defendants in this litigation, service must be properly effected."  ECF No. 37.  On December 29, 2021, Defendants' pre-motion to dismiss conference letter stated Defendants intended to move to dismiss for failure to timely serve (among others) the Individual Defendants.  ECF No. 41 at 2.  Plaintiffs' response to that letter, filed four months later, on April 18, 2022, did not address the failure to serve the Individual Defendants.  *See* ECF No. 47 at 2 (addressing service by saying only that the Town was properly served).  On July 28, 2022, Defendants' renewed pre-motion to dismiss conference letter again stated that Defendants intended to move to dismiss for failure to serve the Individual Defendants.  ECF No. 50 at 7.  Plaintiffs still did not serve the Individual Defendants until two months later. ECF Nos. 61-62.

unrepresented alone does not tilt the *Vaher* factors in [their] favor."[8]  *Bey*, 2022 WL 1469401, at *4

(citing *Vaher v. Town of Orangetown*, N.Y., 916 F. Supp. 2d 404, 420 (S.D.N.Y. 2013)).[9]

Accordingly, the Individual Defendants should be dismissed without prejudice under Rule 4(m).[10]

### D.    Statute Of Limitations[11]

Defendants argue that the statute of limitations has run on all the claims asserted in the FAC.[12]

*See* Def. Mem. at 10-11.  Generally, the burden rests with defendants to plead and prove the

affirmative defense that a claim is time-barred.  *Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315, 319 (2d

Cir. 2021).  Defendants, however, may properly move to dismiss a claim when "the dates in a

complaint show that an action is barred by a statute of limitations."  *Cangemi v. United States*, 13

---

[8] *Vaher* and numerous other decision recognize that courts in this circuit generally consider four factors when determining whether to grant a discretionary extension of time for service: (1) whether any applicable statutes of limitations would bar the action once re-filed, (2) whether the defendant had actual notice of the claims asserted in the complaint, (3) whether defendant attempted to conceal the defect in service, and (4) whether defendant would be prejudiced by extending plaintiff's time for service.  *E.g.*, 916 F. Supp. 2d at 420.

[9] Given that the FAC's claims are untimely (*see infra* Part IV.D), the undersigned notes that "this Court, and many others, have dismissed actions [without prejudice] under Rule 4(m), even when doing so would, in effect, constitute a dismissal with prejudice of the plaintiff's claims." *Jimenez v. U.S. Bank Nat'l Ass'n for CMLTI 2007-WFHE2*, No. 17-CV-00033, 2018 WL 4954097, at *4 (E.D.N.Y. Oct. 11, 2018) (collecting cases).

[10] The claims against the Individual Defendants in their official capacities are also duplicative of the claims against the Town.  "[A]n official-capacity suit against a municipal official 'is, in all respects other than name, to be treated as a suit against the governmental entity.'" *Quinones v. City of Binghamton*, 997 F.3d 461, 466 n.2 (2d Cir. 2021) (quoting *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)) (internal alterations omitted).  That is, an official capacity suit "is *not* a suit against the official personally, for the real party in interest is the entity." *Kentucky*, 473 U.S. at 166.  "Within the Second Circuit, where a plaintiff names both the municipal entity and an official in his or her official capacity, district courts have consistently dismissed the official capacity claims as redundant." *Phillips v. Cnty. of Orange*, 894 F. Supp. 2d 345, 385 n.35 (S.D.N.Y. 2012) (collecting cases); *see Md. Ashik Islam v. Melisa*, No. 18-CV-2535, 2020 WL 1452463, at *4 n.3 (E.D.N.Y. Mar. 24, 2020) (similar).  Thus, even if Plaintiffs had timely served the Individual Defendants, the official capacity claims against them would be subject to dismissal "[b]ecause the Town is named as a defendant" in this action.  *Daytree at Cortland Square, Inc. v. Walsh*, 332 F. Supp. 3d 610, 640 (E.D.N.Y. 2018) (dismissing official capacity claims); *see Castanza v. Town of Brookhaven*, 700 F. Supp. 2d 277, 284 (E.D.N.Y. 2010) ("Since the Town is named in the Complaint, the claims against Defendants, in their official capacities, are dismissed as duplicative and redundant.").

[11] Because the claims are untimely for the reasons set forth herein, the undersigned "need not address Defendants' remaining arguments." *SEC v. Cohen*, 332 F. Supp. 3d 575, 585-86 (E.D.N.Y. 2018); *see, e.g., Marsden v. Colvin*, No. 17-CV-936, 2022 WL 4644672, at *5 n.3 (E.D.N.Y. Sept. 30, 2022) ("Having found that Plaintiff's claims are time-barred, the Court need not address this argument.").

[12] Notably, Defendants' earlier pre-motion letters seeking dismissal of the Complaint did not raise timeliness issues.  *See* ECF Nos. 18, 41.  Defendants first raised timeliness issues in their pre-motion letter seeking to dismiss the FAC.  *See* ECF No. 50.

F.4th 115, 134 (2d Cir. 2021) (quoting *Ghartey v. St. John's Queens Hosp.*, 869 F.2d 160, 162 (2d Cir. 1989)); *see Whiteside*, 995 F.3d at 319 (recognizing that a court "may dismiss a claim on statute-of-limitations grounds at the pleadings stage if the complaint clearly shows the claim is out of time" (internal quotations and alterations omitted)).

As noted above, the remaining claims in Counts III, IV, V, and VI assert causes of action under Section 1983 and Count VII under the ADA. A three-year limitations period applies to all these claims, meaning they must challenge conduct that occurred on or after June 7, 2018 to be timely, as the Complaint was filed on June 7, 2021. *See Lucente v. Cnty. of Suffolk*, 980 F.3d 284, 308 (2d Cir. 2020) ("The statute of limitations for § 1983 actions arising in New York is three years."); *Purcell v. New York Inst. of Tech. - Coll. of Osteopathic Med.*, 931 F.3d 59, 65 (2d Cir. 2019) (holding that a three-year limitations period applies to ADA claims arising in New York).

Notably, Plaintiffs do not argue that their claims, standing alone, are timely. Any such argument is therefore waived. *See, e.g., Rodriguez v. Carson*, 401 F. Supp. 3d 465, 470 (S.D.N.Y. 2019) (finding failure to raise issue in opposition brief constituted waiver); *Tarrant v. City of Mount Vernon*, No. 20-CV-09004, 2021 WL 5647820, at *5 (S.D.N.Y. Dec. 1, 2021) ("Plaintiff chose consciously, by his silence [in opposition], to waive and abandon any argument he could have made."). Plaintiffs instead contend that their claims are timely under the continuing violation doctrine. *See* Opp. at 14-15.

The continuing violation doctrine provides an "exception to the normal knew-or-should-have-known accrual date" for calculating limitations periods. *Harris v. City of New York*, 186 F.3d 243, 248 (2d Cir. 1999). The doctrine may apply to claims "composed of a series of separate acts that collectively constitute one unlawful practice." *Lucente*, 980 F.3d at 309 (internal quotations and alterations omitted). "The continuing violation doctrine thus applies not to discrete unlawful acts, even where those discrete acts are part of a 'serial violation,' but to claims that by their nature accrue

22

only after the plaintiff has been subjected to some threshold amount of mistreatment."[13] *Gonzalez v. Hasty*, 802 F.3d 212, 220 (2d Cir. 2015) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114-15 (2002)) (internal alterations omitted).  Critically, the doctrine requires that "an act contributing to that [violation] took place within the statutory time period."  *Purcell*, 931 F.3d at 65 (internal quotations omitted); *see Lucente*, 980 F.3d at 310 (similar).  In such cases, "the commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of" the continuing violation.  *Fitzgerald v. Henderson*, 251 F.3d 345, 359 (2d Cir. 2002) (internal quotations omitted).  "As a general matter, the continuing violation doctrine is heavily disfavored in the Second Circuit and courts have been loath to apply it absent a showing of compelling circumstances."  *Am. Council of the Blind of N.Y., Inc. v. City of N.Y.*, 495 F. Supp. 3d 211, 245 (S.D.N.Y. 2020) (internal quotations omitted); *Corrado v. N.Y. Unified Court Sys.*, 163 F. Supp. 3d 1, 20 (E.D.N.Y. 2016) (internal quotations omitted).

      1.    <u>The Continuing Violation Doctrine Cannot Apply To Counts III and VII</u>

As noted above, Counts III and VII allege that the 2018 RV Permit Denial violated the Fourteenth Amendment and the ADA.  FAC ¶¶ 58, 61-68, 94-95; *see also* Opp. at 30-31 (relying only on the 2018 RV Permit Denial to argue that Plaintiffs pled a valid ADA claim in Count VII).  The 2018 RV Permit Denial is, however, a discrete event to which the continuing violation doctrine cannot apply.[14]  *See Desuze v. Ammon*, 990 F.3d 264, 272 (2d Cir. 2021) ("The Tenants' Section 1983 claims also are untimely, and the continuing violation doctrine does not save those claims because each arises

---

[13] Although the doctrine applies "most often in connection with certain Title VII claims, its application is not limited to that context."  *Lucente*, 980 F.3d at 309.  Courts have applied the doctrine to Section 1983 and ADA claims. *See id.* (collecting cases applying the continuing violation doctrine to Section 1983 claims); *Shomo v. City of New York*, 579 F.3d 176, 186 (2d Cir. 2009) (ordering district court to evaluate whether ADA claim as pled invoked the continuing violation doctrine).

[14] *Sherman v. Town of Chester* does not compel a contrary conclusion.  *See* Opp. at 7 (citing *Sherman v. Town of Chester*, 752 F.3d 554 (2d Cir. 2014)).  In that case, the continuing violation doctrine applied because "no single" event was allegedly unlawful "when considered in isolation."  *Sherman*, 752 F.3d at 567.  That stands in contrast to the FAC's Counts III and VII that challenge only the 2018 RV Permit Denial.

from a discrete approval process."); *Stamm v. New York City Transit Auth.*, No. 04-CV-2163, 2013 WL 244793, at *11 (E.D.N.Y. Jan. 22, 2013) (finding ADA claim for defendant's refusal to permit plaintiff private access to an articulated bus was incompatible with the continuing violation doctrine because it challenged a discrete event); *see also Kennedy-Bifulco v. Town of Huntington*, No. 08-CV-1612, 2010 WL 6052343, at *8 (E.D.N.Y. Oct. 29, 2010) (finding town's instruction that plaintiff required a permit for an accessory apartment was a discrete act incompatible with the continuing violation doctrine), *report and recommendation adopted*, 2011 WL 883697 (E.D.N.Y. Mar. 10, 2011); *accord Morgan*, 536 U.S. at 113 ("Each discrete discriminatory act starts a new clock for [challenging] that act.").  Counts III and VII should therefore be dismissed with prejudice because the continuing violation doctrine (which is Plaintiffs' only stated basis for rendering those claims timely) cannot apply to them.  *See Shomo*, 579 F.3d at 183-84 (affirming dismissal of untimely claims with prejudice after concluding they were not subject to the continuing violation doctrine); *Corrado*, 163 F. Supp. 3d at 21 (dismissing untimely claims with prejudice after concluding they were incompatible with the continuing violation doctrine).

> 2.    The Continuing Violation Doctrine Does Not Apply To The FAC's Counts IV, V, and VI[15]

Plaintiffs' continuing violation arguments fail with respect to the FAC's Counts IV, V, and VI because the FAC pleads no misconduct by any Defendant within the limitations period, that is on or after June 7, 2018.[16]  Plaintiffs attempt to overcome this deficiency by asserting that the FAC

---

[15] The analysis provided in this section also provides an additional basis for concluding that the continuing violation doctrine does not apply to Counts III and VII.

[16] While the FAC, as discussed above, challenges the Five Judgments imposed by the Town Justice Court on March 18, 2021, the imposition of those judgments could not constitute an action by the Town because the Town Justice Court is part of the New York State Unified Court System—not the Town.  *See* N.Y. Const. art. VI, § 1(a) ("The unified court system for the state shall also include the district, town, city and village courts outside the city of New York . . . ."); N.Y. UNIFORM JUST. CT. ACT § 102 (providing that town justice courts are "part of the unified court system for the state"); *Surpris v. City Ct. of New York, White Plains, Cnty. of Westchester*, No. 21-CV-7698, 2021 WL 5567751, at *2 (S.D.N.Y. Nov. 29, 2021) (finding city court was "unquestionably an arm of the State" because it comprised part of the New York State Unified Court System (quoting *Gollomp v. Spitzer*, 568 F.3d 355, 368 (2d Cir. 2009))).

"address[es] civil rights issues that are ongoing and continuing as of this day."[17]  Opp. at 15; *see id.*

(reporting that "The Town is currently seeking additional fines" and that Plaintiffs "are currently still

appearing" in state court to "address[] issues directly related to the claims in the [FAC]" (emphasis

removed)).  But Plaintiffs cite no portion of the FAC for that assertion, which they must do in order to

properly invoke the continuing violation doctrine.  *See Purcell*, 931 F.3d at 65 (finding continuing

violation doctrine inapplicable because the amended complaint did not support applying the doctrine).

Moreover, Plaintiffs' argument that they still feel the effects of restrictions on the Property is

insufficient to invoke the continuing violation doctrine.  *See* Opp. at 15 (reporting that "Plaintiffs'

property was (and still currently is) subject to a series of fines and economic sanctions . . . ."); *Desuze*,

990 F.3d at 272 (rejecting continuing violation doctrine arguments because "a continuing violation

cannot be established merely because the claimant continues to feel the effects of a time-barred act."

(internal quotations and alterations omitted)); *Pulte Homes of N.Y. LLC v. Town of Carmel*, 736 F.

App'x 291, 293 (2d Cir. 2018) (similar); *Corrado*, 163 F. Supp. 3d at 21 (similar).  Accordingly,

Plaintiffs' continuing violation doctrine argument fails.  *See Shomo*, 579 F.3d at 183 (finding

continuing violation doctrine did not preserve claims against a defendant because the complaint did

not allege that he took any wrongful action within the limitations period); *Purcell*, 931 F.3d at 65

(finding amended complaint's allegations insufficient to invoke the continuing violation doctrine); *c.f.*

*Sherman*, 752 F.3d at 567 ("[B]ecause Sherman alleges that at least one of the acts comprising the

taking occurred within three years of filing the case, his claim is not time barred.").

　　　　Given Plaintiffs' recent efforts to invoke the continuing violation doctrine for Counts IV, V,

and VI fail due to the lack of supporting allegations in the FAC—and this is the first adjudication of

---

[17] Plaintiffs also note that they missed the deadline to challenge the 2018 RV Permit Denial by only "two day[s]." Opp. at 15.  The measure by which Plaintiffs missed that limitations period, though minimal, does not excuse the untimeliness of their claims.  *See Benzemann v. Houslanger & Assocs., PLLC*, 924 F.3d 73, 83 (2d Cir. 2019) (affirming dismissal of claim as time-barred because it was filed one day after the limitations period expired); *Cartwright v. Comm'r of Soc. Sec.*, No. 19-CV-10853, 2021 WL 4249430, at *5 (S.D.N.Y. Sept. 17, 2021) (dismissing as untimely a complaint filed one day after the limitations period expired; collecting cases that did the same).

the sufficiency of Plaintiffs' pleading—those claims should be dismissed as untimely without prejudice.  *See Ruggiero v. Way*, No. 19-CV-3631, 2020 WL 5126112, at *11 (S.D.N.Y. Aug. 31, 2020) (dismissing claims without prejudice because "it is possible that the Plaintiff can plead facts that do cure those deficiencies . . . Although Plaintiff certainly has high hurdles to overcome, leave to amend in this case is not necessarily futile at this juncture"); *O'Hara v. Bd. of Coop. Educ. Servs., S. Westchester*, No. 18-CV-8502, 2020 WL 1244474, at *15 (S.D.N.Y. Mar. 16, 2020) (dismissing second amended complaint's ADA retaliation claim without prejudice as time-barred because the Court's Opinion & Order was "the first adjudication on the merits of Plaintiff's claims"); *Chao v. Xanadu Boutique, Inc.*, 380 F. Supp. 2d 134, 136 (E.D.N.Y. 2005) ("[P]laintiff fails to plead in the complaint circumstances that justify equitable tolling, despite plaintiff's attempt to raise certain factual allegations for the first time in its memorandum of law. Accordingly, defendants' motion to dismiss is granted without prejudice to plaintiff's right to file an amended complaint setting forth allegations satisfying equitable tolling."); *see also* Fed. R. Civ. P. 15(a) (providing that leave to amend should be "freely given when justice so requires").

## V.   CONCLUSION

For the reasons described above, the undersigned recommends that the Court (1) dismiss *sua sponte* with prejudice the FAC's claims against the Board and Trustees, and (2) grant the Motion by (a) dismissing with prejudice the FAC's Counts III and VII, and (b) dismissing without prejudice the balance of the FAC.

## VI.   OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections.  *See also* Fed. R. Civ. P. 6(a) & (d) (addressing computation of days).  Any requests for an extension of time for filing objections must be directed to Judge Azrack.  FAILURE TO

FILE TIMELY OBJECTIONS SHALL CONSTITUTE A WAIVER OF THOSE OBJECTIONS BOTH IN THE DISTRICT

COURT AND ON LATER APPEAL TO THE UNITED STATES COURT OF APPEALS. *See Thomas v. Arn*, 474

U.S. 140, 154-55 (1985); *Frydman v. Experian Info. Sols., Inc.*, 743 F. App'x 486, 487 (2d Cir. 2018);

*McConnell v. ABC-Amega, Inc.*, 338 F. App'x 24, 26 (2d Cir. 2009); *F.D.I.C. v. Hillcrest Assocs.*, 66

F.3d 566, 569 (2d Cir. 1995).

**SO ORDERED:**

Dated:       Central Islip, New York            s/ Lee G. Dunst
             June 7, 2023
                                              _____

                                              **LEE G. DUNST**
                                              United States Magistrate Judge